IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH HAWTHORNE, <br> # B31208, <br> <br>      **Plaintiff,** <br> <br> vs. <br> <br> JULIUS FLAGG, <br> LT. AARON J. MIDDLETON, <br> JENNIFER WALLACE, <br> CARA R. BRASSEL, <br> and JOHN/JANE DOE, <br> <br>      **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 16-cv-01108-MJR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Kenneth Hawthorne, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this civil rights action pursuant to 42 U.S.C. § 1983 against five officials at Centralia Correctional Center ("Centralia"). (Doc. 1). In the Complaint, Plaintiff alleges that an unknown prison official ("John/Jane Doe") at Centralia added a charge for sexual misconduct (Rule 107) to a disciplinary ticket that he received for insolence (Rule 304) on October 19, 2014. (Doc. 1, pp. 3-15). Plaintiff was found guilty of both rule violations and punished with a disciplinary transfer and 3 months of segregation, among other things. *Id*. Although the sexual misconduct violation was ultimately dismissed, Plaintiff claims that he endured 2 additional months of segregation as a result. *Id*.

He now brings claims against the following defendants for due process violations under the Fourteenth Amendment, retaliation under the First Amendment, and cruel and unusual punishment under the Eighth Amendment: Julius Flagg (warden), Aaron Middleton (adjustment

1

committee chairperson), Jennifer Wallace (grievance officer), Cara Brassel (correctional officer), and John/Jane Doe (unknown officer). *Id*. He seeks declaratory judgment and monetary damages against the defendants. (Doc. 1, pp. 16-17).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se*

complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After carefully considering the allegations, the Court finds that the Complaint does not survive review under § 1915A and shall therefore be dismissed.

## **The Complaint**

While incarcerated at Centralia on October 19, 2014, Plaintiff alleges that he asked to speak with a female correctional officer named C/O Brassel. (Doc. 1, p. 3). When Brassel came to his room, Plaintiff asked her for "permission to speak freely." *Id*. Brassel granted him permission to do so, and Plaintiff informed the correctional officer that "he likes her and thinks she is a cool officer, because [she] never shakes[s] down cells, write[s] tickets, or give[s] anyone a hard time." *Id*. Plaintiff also told Brassel that he would let her know if anyone ever spoke negatively about her in his presence. *Id*. Brassel said, "[S]ounds good." *Id*. At that, she walked away. *Id*.

What Plaintiff failed to tell Brassel is that he heard a negative report about her two or three days earlier. (Doc. 1, p. 4). Another inmate, Christopher Davis, told him that Brassel "backed her ass up into him and told him that she has to be cool because I.A. is watching her." *Id*. Inmate Davis intimated that he had more information about Brassel and would share it with Plaintiff later. Plaintiff claims that he intended to share this information with Brassel. *Id*.

Before he could do so, however, Plaintiff was cuffed and taken to segregation by Lieutenant Shreve.[1] (Doc. 1, p. 4). When Plaintiff asked the lieutenant to explain why he was being placed in segregation, Shreve stated that he used to work with Brassel's father in the same

---

[1] This individual is not named as a defendant in the case caption, and Plaintiff asserts no claims against him. All potential claims against Lieutenant Shreve are therefore considered dismissed without prejudice from this action. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

prison. *Id*. Shreve assured Plaintiff that he would tell Brassel anything she needed to know. *Id*. Plaintiff did not need to "look out for her." *Id*.

On October 21, 2014, Plaintiff received a disciplinary ticket for violating Rule 304 – insolence and Rule 107 – sexual misconduct. (Doc. 1, p. 4). When he looked closely at the ticket, Plaintiff realized that the word "ALONE" and "107 – Sexual Misconduct" were written in different handwriting than the rest of the ticket. *Id*. Plaintiff immediately concluded that someone other than Brassel doctored the ticket by adding the sexual misconduct charge. *Id*.

Plaintiff attended a disciplinary hearing two days later. At the hearing, he submitted a 4-page letter to the committee. (Doc. 1, p. 5). In the letter, Plaintiff admitted that he approached Brassel and spoke with her on October 19, 2014. *Id*. He also described his conversation with Inmate Davis.[2] The adjustment committee found Plaintiff guilty of both rule violations. (Doc. 1, p. 20). He was punished with a 1-month loss of good conduct credit and a disciplinary transfer to Pinckneyville. *Id*. Plaintiff also received 3 months of segregation, C-grade status, and a gym/yard restriction. *Id*.

On October 30, 2014, Plaintiff filed a grievance to complain that his disciplinary ticket was altered by an undisclosed officer ("John/Jane Doe"). (Doc. 1, p. 6). He requested the name of the officer who added "ALONE" and "107 – Sexual Misconduct" to his disciplinary ticket. *Id*. He complained that he was deprived of the opportunity to confront John/Jane Doe at his disciplinary hearing. *Id*.

Jennifer Wallace denied Plaintiff's grievance. (Doc. 1, p. 6). Wallace believed Brassel when she said that she was responsible for the changes to the ticket. (Doc. 1, pp. 6, 27). Plaintiff claims that this was "clearly a lie." (Doc. 1, p. 6). He insists that another officer, who

---

[2] Soon after Plaintiff submitted the letter, Inmate Davis was placed in segregation. (Doc. 1, p. 5). Plaintiff speculates that Brassel learned about the contents of his letter, realized that she could not trust Inmate Davis, and had him placed in segregation to "clear herself of any wrong doing." (Doc. 1, pp. 5-6).

4

Plaintiff thinks was also under investigation, added this rule violation to the ticket in order to subject Plaintiff to harsher punishment.  (Doc. 1, pp. 6-8).

Plaintiff alleges that Wallace was biased.  Two or three years before the incident at issue in this case, Wallace was investigated for sexual misconduct.  (Doc. 1, p. 6).  At the time, she was working as a law clerk or librarian at the prison.  *Id*.  The matter was ultimately resolved in her favor.  *Id*.  However, Plaintiff contends that Wallace willingly disregarded the truth surrounding his disciplinary ticket because Wallace "almost lost her job" over a similar incident.  (Doc. 1, p. 7).  This personal bias prevented Wallace from carrying out her administrative duties fairly.  *Id*.

In addition, Plaintiff maintains that Centralia's warden, Julius Flagg, failed to investigate Plaintiff's allegations in the 4-page letter because he was also biased.  (Doc. 1, p. 8).  Plaintiff alleges that, "upon information and belief," the warden overlooked Plaintiff's claims because Brassel was the daughter of a former employee.  *Id*.  In signing off on the grievance officer's report, Plaintiff claims that the warden conspired to retaliate against Plaintiff.  (Doc. 1, p. 9).

Similarly, Plaintiff maintains that Lieutenant Middleton, the disciplinary committee chairperson, failed to investigate Plaintiff's allegations or acknowledge the "obvious difference" in Brassel's handwriting and the additions to the ticket.  *Id*.  Middleton "should have known" that the comment Plaintiff made to Brassel (*i.e.*, "I really like you") did not meet the requirements for 107 – sexual misconduct.  *Id*.

On June 4, 2015, the Administrative Review Board ("ARB") overturned the decision of the disciplinary committee with respect to the sexual misconduct violation.  (Doc. 1, pp. 7, 28).  The ARB held that the offense should be dismissed.  *Id*.  This was despite the fact that the ARB

5

found no due process violation associated with the issuance of the ticket on October 19, 2014. *Id*. In so finding, the ARB determined that the ticket listed both rule violations on the date it was served, it was served within the required 8 days, it was heard within the required 14 days, and it was issued with 24 hours of notice. (Doc. 1, p. 28). Further, the ARB held that a reviewing officer or hearing investigator may add a charge to a disciplinary ticket. *Id*.

Plaintiff now claims that his punishment was increased from 1- to 3- months because of the sexual misconduct charge. (Doc. 1, p. 10). He complains that Pinckneyville was much less desirable than Centralia because the prison was on lockdown "nearly all day." *Id*. Plaintiff was denied commissary and phone privileges. *Id*. In addition, he was deprived of work opportunities. *Id*.

Plaintiff suggests that the defendants added the sexual misconduct charge because they believed he was working as an informant for internal affairs. He sues all of the defendants for denying him due process of law in violation of the Fourteenth Amendment, conspiring to retaliate against him in violation of the First Amendment, and subjecting him to cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 1, pp. 3-15). He seeks declaratory judgment and monetary damages against the defendants. (Doc. 1, pp. 16-17).

## Discussion

The Court finds it convenient to divide the Complaint into the following enumerated counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1 -** Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law in connection with the additional charge of sexual misconduct that was added to Plaintiff's disciplinary ticket on October 19, 2014.

    **Count 2 -**     First Amendment retaliation claim against the defendants for adding the charge of sexual misconduct to the disciplinary ticket that Plaintiff received on October 19, 2014, because the defendants believed that he was working with internal affairs to set up C/O Brassel for a claim of staff misconduct.

    **Count 3 -**     Eighth Amendment claim against defendants for subjecting Plaintiff to unconstitutional conditions of confinement in segregation for 60 days longer than he should have been punished.

The Complaint articulates no colorable due process claim (**Count 1**), retaliation claim (**Count 2**), or conditions of confinement claim (**Count 3**) against the defendants. For the reasons set forth below, all three claims shall be dismissed with prejudice.

As an initial matter, the Court must determine whether Plaintiff's claim for monetary relief is barred by *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994). Pursuant to *Heck*, a prisoner may not bring a civil rights claim for money damages based on an allegedly unconstitutional disciplinary action that includes the revocation of good conduct credit, unless the disciplinary "conviction" is overturned or expunged. *Heck*, 512 U.S. at 486-87. For purposes of *Heck*, a disciplinary action is equivalent to a conviction. *See also Edwards v. Balisok*, 520 U.S. 641, 649 (1997) (*Heck* bar means that a plaintiff has no claim to pursue so long as the punishment imposed remains in force); *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). Plaintiff's claim for money damages arises from a disciplinary decision that has been overturned.[3] Accordingly, Plaintiff's claim is not *Heck*-barred.

### Count 1

In order to state a due process claim, Plaintiff must first show that a protected liberty interest was at stake and, second, that he was deprived of the liberty interest without due process

---

[3] Further, Plaintiff's punishment for the Rule 107 – sexual misconduct violation did not include the loss of 1 month of good conduct credit. That punishment is tied to Plaintiff's Rule 304 – insolence violation and stands unchallenged by Plaintiff. (Doc. 1, pp. 29-30).

of law. In other words, "[a]n essential component of a procedural due process claim is a protected property or liberty interest." *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 779 (7th Cir. 2008) (internal citations omitted). Without one, no process is due.

Plaintiff's disciplinary transfer to Pinckneyville does not give rise to a protected liberty interest. The Constitution "does not create an interest in avoiding transfer[s] within a correctional facility" or in being housed in a particular facility. *Townsend v. Fuchs*, 522 F.3d 765, 771-72 (7th Cir. 2008) (citing *Wilkinson v. Austin*, 545 U.S. 209, 222-24 (2005); *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). *See also Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995); *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A transfer from one prison to another generally does not affect a protected liberty interest, even if the conditions are more adverse. *See, e.g., Meachum*, 427 U.S. at 225.

Further, the additional 60 days that Plaintiff spent in segregation as a result of the sexual misconduct charge gives rise to no liberty interest. A protected liberty interest arises only if the placement in segregation "imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). When making this determination, courts consider two factors: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98) (7th Cir. 2009) (emphasis in original)).

The Seventh Circuit has routinely dismissed claims challenging confinement in segregation for 2 months or less on due process grounds. *See, e.g., Townsend*, 522 F.3d at 771 (59-day period of discretionary lockup gives rise to no protected liberty interest); *Hoskins*, 395

F.3d at 374-75. When the duration is sufficiently short, dismissal of an inmate's due process claim is appropriate without conducting an inquiry into the conditions of his confinement. *See, e.g.*, *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005) (2 days in solitary confinement); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (70 days in segregation was "obviously a relatively short period when one considers . . . 12 year prison sentence"). *See also Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir. 2004) (noting that cases involving segregation of less than 30 days may be dismissed without a detailed factual record regarding conditions of confinement, but holding that 77 days' segregation warrants further review). Plaintiff's confinement in segregation for an extra 60 days is sufficiently short to warrant dismissal of his due process claim under the circumstances presented in the Complaint.

There, Plaintiff describes the conditions of his confinement in detail, but no allegations suggest that he suffered an "atypical and significant hardship." *Wilkinson*, 545 U.S. at 223 (*Sandin*, 515 U.S. at 484). Plaintiff complains of commissary restrictions, work restrictions, suspension of phone privileges, demotion to C-grade status, restrictions on yard access, and restrictions on time spent outside his cell. However, a protected liberty interest generally does not arise from any of these restrictions. *See Thomas*, 130 F.3d at 762 n. 8 (no protected liberty interest in demotion to C-grade status and loss of commissary privileges); *See also Hoskins*, 395 F.3d at 374-75 (punishments suffered because of inmate's disciplinary conviction—demotion in status, segregation, and transfer—raise no due process concerns). Neither the duration of Plaintiff's confinement in segregation nor the conditions he describes in the Complaint give rise to a protected liberty interest. Without a protected liberty interest, no process was due.

Further, the Court finds that Plaintiff's due process rights were not violated in connection with the disciplinary charge. The protection that inmates enjoy against the arbitrary action of

9

prison officials "is found in the procedures mandated by due process." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). The Seventh Circuit has held that the filing of false disciplinary charges by a correctional officer, such as those against Plaintiff for sexual misconduct, does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges and is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Hanrahan*, 747 F.2d at 1140-41. Those procedural protections include advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed. *Id*. Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black*, 22 F.3d at 1402. To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

The only due process violation that Plaintiff identified in connection with his disciplinary hearing was the inability to confront the officer who added the sexual misconduct charge to his ticket. Plaintiff maintains that this individual was someone *other* than Brassel, despite Brassel's later statement to the contrary. Even assuming that allegation is true, the Court finds no due process violation.

For one thing, Plaintiff makes no claim that he submitted a request to call this witness prior to his disciplinary hearing. An inmate's right to call witnesses at his prison disciplinary

10

hearing is limited to instances when doing so is consistent with institutional safety and correctional goals, *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003), and when the inmate identifies the witness prior to the hearing. *Miller v. Duckworth*, 963 F.2d 1002, 1004 n. 2 (7th Cir. 1992). Plaintiff asserts that the identity of the witness was withheld from him. However, even assuming that this is true, he could have submitted a request to call this witness prior the hearing by identifying him or her in generic terms.

No doubt, the finding of the disciplinary committee was supported by "some evidence." Plaintiff admitted to the conversation with Brassel on October 19, 2014. Like Brassel, the committee interpreted the conversation differently than Plaintiff intended. However, this difference of opinion does not amount to a due process violation by members of the disciplinary committee or their supervisors who signed off on the decision.

Moreover, Wallace's denial of Plaintiff's subsequent grievance supports no independent due process claim under the Fourteenth Amendment. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). A cause of action does not arise where a plaintiff files a grievance and simply disagrees with the outcome. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff has access to grievance procedures but did not obtain the outcome he desired).

In light of the foregoing considerations, the Court finds that the Complaint supports no claim against the defendants for a deprivation of a protected liberty interest without due process of law. Accordingly, **Count 1** shall be dismissed with prejudice.

## Count 2

In order to state a claim for retaliation, a plaintiff must: (1) identify a retaliatory action; (2) name the appropriate defendants; and (3) "assert[ ] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." *Hoskins*, 395 F.3d at 375. The prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in the defendant's actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Plaintiff asserts that the defendants conspired to retaliate against him by adding a charge of sexual misconduct to the disciplinary ticket he received on October 19, 2014. However, he identifies no protected conduct that triggered this retaliation. Federal courts typically recognize a claim for "retaliation" when prison officials take adverse actions against prisoners for exercising their First Amendment rights. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Johnston v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000). However, Plaintiff's statements to Brassel do not constitute protected conduct. *See, e.g.*, *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected."). *See also Trejo v. Shoben*, 319 F.3d 878, 887 (7th Cir. 2003) (First Amendment does not protect casual, idle, or flirtatious chit-chat in employment

setting). Plaintiff does not suggest that these statements to Brassel were protected, and he also does not challenge the finding of guilt for insolence that arose from the same statements.

Moreover, the reasons that Plaintiff offers for the retaliation are vague and purely speculative. He offers alternative theories. Plaintiff states that the defendants were trying to protect themselves from prosecution for misconduct, they were biased, they knew Brassel's father, and/or they believed he was working with internal affairs to set up Brassel. All of these allegations are far-fetched conjecture and fall short of satisfying the requirements for stating a viable legal claim under *Twombly* and *Iqbal*. **Count 2** shall also be dismissed with prejudice.

### Count 3

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm to an inmate's health and safety. *Estate of Miller, ex. rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). In order to state a claim for unconstitutional conditions of confinement, Plaintiff must meet two requirements. First, he must demonstrate that the conditions he endured were "sufficiently serious" to constitute cruel and unusual punishment (an objective standard). Conditions violate the Eighth Amendment when they result in an "unquestioned and serious deprivation [ ] of basic human needs" or deprive the prison of "the minimal civilized measure of life's necessities." *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) (citations omitted). Second, Plaintiff must show that the defendants responded with deliberate indifference to the inmate's health or safety (a subjective standard). *Farmer v. Brennan*, 511 U.S. 825 (1994). This occurs when a defendant knows of and disregards a substantial risk of serious harm to the inmate from those conditions. *Id*.

Plaintiff complains about the conditions of confinement in segregation at Pinckneyville. He compares life at Centralia to life at Pinckneyville, concluding the former was preferable. Absent from his Complaint is a single allegation that he was deprived of any basic human necessities, such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). The Complaint does not describe any conditions that resulted in unquestioned and serious deprivations of basic human needs or that deprived him of the minimal civilized measure of life's necessities. *Id.* at 347. The objective component of this claim is not satisfied.

Likewise, the subjective component of this claim is not satisfied. Plaintiff includes no allegation suggesting that any particular defendant knew of a serious deprivation suffered by Plaintiff in segregation and deliberately disregarded it. Unless Plaintiff can show that prison officials acted, or failed to act, despite the officials' actual knowledge of a substantial risk of serious harm, he states no claim for unconstitutional conditions of confinement. *Farmer*, 511 U.S. at 842.

The Complaint articulates no viable claim against the defendants under the Eighth Amendment. The allegations fail to satisfy the objective and subjective components of this claim. Under the circumstances, **Count 3** shall also be dismissed with prejudice.

## Disposition

**IT IS ORDERED** that the Complaint (Doc. 1) and this action (including Counts 1, 2, and 3) are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.

*See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS FURTHER ORDERED** that Defendants **JULIUS FLAGG, AARON MIDDLETON, JENNIFER WALLACE, CARA BRASSEL,** and **JOHN/JANE DOE** are **DISMISSED** with prejudice from this action.

**IT IS ALSO ORDERED** that Plaintiff's Motion to Request a Complimentary Copy of the Local Rules (Doc. 5) for use in this case is **DENIED** as **MOOT,** given the Court's decision to dismiss the action.

If Plaintiff wishes to appeal this Order, he may file a Notice of Appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. 4(A)(4).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: January 6, 2017**

                                             **s/ MICHAEL J. REAGAN**
                                             **Chief Judge**
                                             **United States District Court**